ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ROBERTO ORTIZ DE JESÚS<br><br>RECURRENTE<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>RECURRIDOS | TA2026RA00060 | *Revisión Administrativa* procedente del Estado Libre Asociado de Puerto Rico, Junta de Planificación de Puerto Rico<br><br>Sobre: Impugnación del Plan de Ordenación Territorial del Municipio de Cidra |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de marzo de 2026.

Comparece ante nos el señor Roberto Ortiz de Jesús (en adelante, el recurrente), por derecho propio, mediante recurso de *Revisión Administrativa*, y solicita que revisemos la aprobación del Plan de Ordenación Territorial del Municipio de Cidra (en adelante, POT o Plan), adoptado mediante *Ordenanza Núm. 13*, Serie 2025-2026, de la Legislatura Municipal de Cidra, y aprobado posteriormente por la Gobernadora de Puerto Rico mediante *Orden Ejecutiva OE-2026-003*, firmada el 14 de enero de 2026.

Por los fundamentos que se exponen a continuación, se desestima parcialmente el recurso presentado, por falta de jurisdicción, y se confirma el proceso de aprobación del POT.

**I.**

Del expediente surge que el Municipio de Cidra (en adelante, el Municipio) inició el proceso para la Revisión Integral de su Plan de Ordenación Territorial (POT) conforme a las disposiciones de la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, conocida como Código Municipal de

Puerto Rico, 21 LPRA sec. 7001 *et seq.* (en adelante, Código Municipal); la Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como Ley Orgánica de la Junta de Planificación de Puerto Rico, 32 LPRA sec. 62 *et seq.* (en adelante, Ley Núm. 75); y al Reglamento para la Ordenación Territorial Municipal de Puerto Rico, Reglamento de Planificación Núm. 43, aprobado el 18 de octubre de 2024 (en adelante, Reglamento de Planificación Núm. 43).

Según consta en la *Ordenanza Núm. 13*, el Municipio formalizó un Acuerdo Colaborativo con la Junta de Planificación para la elaboración de la revisión integral del Plan. Asimismo, el 5 de marzo de 2025 se constituyó una Junta de Comunidad conforme al Artículo 6.013 del Código Municipal, 21 LPRA sec. 7863.

El proceso de revisión se estructuró en tres fases: Fase I (Enunciación de Objetivos, Plan de Trabajo, Memorial y Programa), Fase II (Avance) y Fase III (Plan Final), comprendiendo la preparación del Memorial, el Programa de Actuación y la Reglamentación.

Como parte del trámite, el 4 de junio de 2025 el Municipio publicó un *Aviso de Vista Pública*, en español e inglés, en los periódicos Primera Hora y La Cordillera, anunciando la celebración de vistas públicas para las Fases I y II, a celebrarse el 24 de junio de 2025, en hora de 1:30 pm y 5:30 pm, respectivamente. Consta en autos copia del aviso publicado en ambos periódicos correspondiente a dicha fecha.[1] Del referido aviso surge que en las vistas públicas se discutirían los documentos correspondientes a las Fases I y II del proceso de revisión. Estos incluían la enunciación de metas y objetivos, el Plan de Trabajo, el Memorial, el Programa y la propuesta preliminar de clasificación y calificación de suelos del municipio.[2]

---

[1] Véase *Aviso de Vista Pública* de la vista del 24 de junio de 2025 en los anejos del recurso de *Revisión Administrativa.*
[2] *Id.*

Asimismo, el *Aviso de Vista Pública* dispone que los documentos que se discutirían en la vista pública estarían disponibles "en horas laborables 15 días desde la publicación de este aviso" en la Casa Alcaldía del Municipio de Cidra, en el Programa de Planificación Física de la Junta de Planificación en Santurce, en la Oficina de Gerencia de Permisos (OGPe) Central en San Juan y en la Oficina de Gerencia de Permisos (OGPe) Regional de Humacao. Además, señala que también estarían disponibles en la página de internet de la Junta de Planificación: www.jp.pr.gov/planes-territoriales/.[3]

El aviso, además, invitaba a los organismos gubernamentales, entidades privadas y a la ciudadanía en general a participar en las vistas públicas y a someter comentarios por escrito dentro del término de treinta (30) días dispuesto en la Sección 2.2 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9612 (en adelante, LPAU).[4]

De otra parte, según consta en el expediente, el Municipio pautó un anuncio radial con la emisora WUNO-Am, para los días 12 y 17 de junio de 2025, en los cuales se anunciaba la celebración de las vistas públicas correspondientes a la Fase I y Fase II de la Revisión Integral del Plan de Ordenamiento Territorial a celebrarse el 24 de junio de 2025.[5]

El 24 de junio de 2025 se celebraron las vistas públicas correspondientes a las Fases I y II.

Posteriormente, el 20 de agosto de 2025 el Municipio publicó un *Aviso de Vista Pública* en el periódico Primera Hora y en el periódico La Cordillera, en español e inglés, anunciando la celebración de la vista pública correspondiente a la Fase III, a celebrarse el 4 de septiembre de 2025. Consta en el expediente copia del *Aviso de Vista Pública* publicado para dicha fecha

---

[3] *Id.*

[4] *Id.*

[5] Véase Apéndice 18 de la *Oposición a Recurso de Revisión Administrativa* presentada por el Municipio, pág. 3, Entrada Núm. 9 del SUMAC del TA.

en ambos periódicos[6], del cual surge que en la vista correspondiente a la Fase III se discutiría el Plan Final de la Revisión Integral del POT. Asimismo, respecto a dónde estarían disponibles los documentos a discutirse en las vistas y a la invitación para la participación ciudadana, el contenido de este último aviso es, en esencia, el mismo que el del aviso publicado para las vistas del 24 de junio de 2025.

A su vez, del expediente surge que se pautaron anuncios radiales relacionados con la celebración de la vista correspondiente a la Fase III, pautada para el 4 de septiembre de 2025.[7]

Posteriormente, el 4 de septiembre de 2025 se celebró dicha vista sobre la Fase III del POT, relativa al Plan Final y a la Propuesta de Modificación Menor al Plan de Uso de Terrenos de Puerto Rico (PUT-PR-2015).

Concluidas las vistas públicas, el Municipio presentó el Plan Final el 23 de septiembre de 2025. La Legislatura Municipal de Cidra aprobó la Primera Revisión Integral del Plan de Ordenación Territorial de Cidra mediante la *Ordenanza Núm. 13*, Serie 2025-2026, el 16 de octubre de 2025, la cual fue firmada por el Alcalde el 17 de octubre de 2025.

La Junta de Planificación, en reunión celebrada el 22 de octubre de 2025, adoptó la Primera Revisión Integral del Plan de Ordenación Territorial de Cidra mediante Resolución Núm. JP-PT-44-04.

Finalmente, el 14 de enero de 2026, la Gobernadora de Puerto Rico firmó la *Orden Ejecutiva Núm. OE-2026-003*, mediante la cual aprobó la Primera Revisión Integral del Plan de Ordenación Territorial del Municipio de Cidra.

---

[6] Véase Apéndice 19, 20 y 21 de la *Oposición a Recurso de Revisión Administrativa* presentada por el Municipio, Entrada Núm. 9 del SUMAC del TA.
[7] Véase Apéndice 13, 22 y 27 de la *Oposición a Recurso de Revisión Administrativa* presentada por el Municipio, Entrada Núm. 9 del SUMAC del TA.

Inconforme con el proceso de aprobación del Plan, el recurrente compareció ante este Tribunal mediante el recurso de epígrafe en el que señala la comisión de los siguientes errores:

**PRIMER ERROR: ERRÓ LA GOBERNADORA DE PUERTO RICO Y LAS AGENCIAS PERTINENTES AL APROBAR UN REGLAMENTO QUE ES NULO DE SU FAZ POR VIOLAR EL DEBIDO PROCESO DE LEY EN SU VERTIENTE PROCESAL POR INCUMPLIR SUSTANCIALMENTE CON EL PROCESO DE NOTIFICACIONES QUE REQUIERE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME Y LAS DISPOSICIONES DEL REGLAMENTO PARA LA ORDENACIÓN TERRITORIAL MUNICIPAL DE PUERTO RICO REGLAMENTO DE PLANIFICACIÓN NÚMERO: 43.**

**SEGUNDO ERROR: ERRÓ LA GOBERNADORA DE PUERTO RICO Y LAS AGENCIAS PERTINENTES AL APROBAR UN REGLAMENTO QUE ES NULO DE SU FAZ POR VIOLAR EL DEBIDO PROCESO DE LEY EN SU VERTIENTE PROCESAL POR INCUMPLIR SUSTANCIALMENTE CON EL PROCESO DE REGLAMENTACIÓN YA QUE LA REGLAMENTACIÓN APROBADA NO CUMPLE CON LA SECCIÓN 2.5 B DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME. AL CARECER [DE] UNA EXPLICACIÓN BREVE Y CONCISA DE SUS PROPÓSITOS O DE LAS RAZONES PARA SU ADOPCIÓN O ENMIENDA QUE INCLUYA UN RESUMEN EJECUTIVO DISPONIENDO DE FORMA CLARA Y PRECISA EL PROPÓSITO, LA JUSTIFICACIÓN Y LOS COSTOS Y BENEFICIOS DE LA REGLAMENTACIÓN PROPUESTA.**

**TERCER ERROR: ERRÓ LA GOBERNADORA DE PUERTO RICO Y LAS AGENCIAS PERTINENTES AL APROBAR UN REGLAMENTO QUE ES NULO DE SU FAZ POR VIOLAR EL DEBIDO PROCESO DE LEY EN SU VERTIENTE PROCESAL POR INCUMPLIR SUSTANCIALMENTE CON EL PROCESO DE REGLAMENTACIÓN YA QUE EL EXPEDIENTE ADMINISTRATIVO NO CUMPLE CON LA SECCIÓN 2.6 A Y B DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME AL CARECER DE COPIAS DE TODA PUBLICACIÓN EN RELACIÓN A LA REGLA O AL PROCEDIMIENTO.**

**CUARTO ERROR: ERRÓ LA GOBERNADORA DE PUERTO RICO Y LAS AGENCIAS PERTINENTES AL APROBAR UN REGLAMENTO QUE ES NULO DE SU FAZ POR VIOLAR EL DEBIDO PROCESO DE LEY EN SU VERTIENTE PROCESAL POR INCUMPLIR SUSTANCIALMENTE SECCIONES 2.2.4, 2.2.5, 2.2.6 DEL REGLAMENTO PARA LA ORDENACIÓN TERRITORIAL MUNICIPAL DE PUERTO RICO, AL NOMBRAR UNA JUNTA QUE NO PROPICIO LA PARTICIPACIÓN CIUDADANA E INCUMPLIÓ SUSTANCIALMENTE CON LOS DEBERES IMPUESTOS.**

En síntesis, el recurrente impugna la validez de su faz del referido Plan, al amparo de la Sección 2.7 de la LPAU, 3 LPRA sec. 9617, al alegar que el

proceso de aprobación del POT incumplió sustancialmente con los requisitos de notificación, publicación y participación ciudadana establecidos en dicho estatuto y en el Reglamento para la Ordenación Territorial Municipal de Puerto Rico.

En respuesta al recurso, comparecieron las partes recurridas mediante escritos en oposición, solicitando la desestimación del recurso y/o la confirmación del proceso de aprobación del Plan.

En primer lugar, el 11 de marzo de 2026, el Municipio presentó su *Oposición a Recurso de Revisión Administrativa*[8]. En su escrito, el Municipio planteó que el recurso fue instado mediante un mecanismo incorrecto, ya que los primeros tres errores impugnan directamente actuaciones de la Gobernadora, lo cual —a su juicio— requeriría un pronunciamiento sobre la validez de actos del Poder Ejecutivo que no es revisable mediante un recurso de revisión administrativa ante este Tribunal. Asimismo, argumentó que el cuarto señalamiento de error no constituye una impugnación de la validez de su faz del Plan, sino un cuestionamiento a actuaciones de la Junta de Comunidad y al cumplimiento de deberes administrativos, por lo que también escapa al ámbito de revisión del recurso.

Por su parte, el 13 de marzo de 2026, el Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General presentó un escrito titulado *Comparecencia Especial del Estado*[9]. En este, argumentó que este Tribunal carece de jurisdicción para atender los planteamientos de naturaleza sustantiva, ya que el recurso se limita a una impugnación reglamentaria de su faz. En esa línea, señaló que, en su cuarto señalamiento de error, el recurrente pretende cuestionar las actuaciones de la Junta de la Comunidad durante el proceso de revisión integral del POT del Municipio, sin que ello constituya un señalamiento dirigido a impugnar el Plan de su faz por

---

[8] Entrada Núm. 9 del SUMAC del TA.
[9] Entrada Núm. 10 del SUMAC del TA.

incumplimiento con las exigencias procesales de la LPAU. Además, indicó que los señalamientos relacionados con el cumplimiento de los requisitos procesales deben ser atendidos por las entidades que intervinieron en el proceso de aprobación del Plan, esto es, el Municipio y la Junta de Planificación.

Por último, en la misma fecha, el 13 de marzo de 2026, la Junta de Planificación compareció con su *Alegato de la parte recurrida*[10]. En este argumentó que el recurso adolece de defectos jurisdiccionales, ya que el recurrente intenta impugnar una actuación municipal utilizando indebidamente la Sección 2.7 de la LPAU. En la alternativa, sostuvo que, de este Tribunal entender que tiene jurisdicción para atender el recurso, solo podría atender aquellos señalamientos dirigidos a incumplimientos con las garantías procesales mínimas que impone la LPAU, sin que se puedan evaluar los supuestos incumplimientos sustanciales al Reglamento para la Ordenación Territorial Municipal de Puerto Rico. Asimismo, argumentó que el expediente demuestra que el Municipio cumplió sustancialmente con los requisitos procesales establecidos en la LPAU. En particular, alegó que: (i) los avisos de prensa y anuncios radiales cumplieron sustancialmente con las disposiciones legales; (ii) las vistas públicas se celebraron conforme a la normativa; (iii) se cumplió con la Sección 2.5 de la LPAU en cuanto a la justificación de la reglamentación; y (iv) el expediente administrativo satisface los requisitos de la Sección 2.6 de la LPAU.

**II.**

Como norma general, antes de considerar los méritos de una impugnación reglamentaria como la de autos, los tribunales deben cerciorarse de que: (1) la Legislatura permitió la revisión judicial; (2) la parte apropiada presentó la acción; (3) el reclamo se instó contra el demandado correcto; (4) la controversia goza de la necesaria madurez, y (5) se utilizó el

---

[10] Entrada Núm. 11 del SUMAC del TA.

recurso adecuado. *Centro Unido Detallistas v. Com. Serv. Púb.*, 174 DPR 174, 181-182 (2008); véase, además, B. Schwartz, *Administrative Law*, 3ra ed., Ed. Little, Brown and Co., 1991, págs. 470–471.

En el presente caso no existe duda de que se cumple con el tercer requisito antes mencionado, toda vez que el recurso fue instado contra las entidades gubernamentales que intervinieron en el proceso de aprobación y adopción de la Primera Revisión Integral del Plan de Ordenación Territorial del Municipio de Cidra, a saber, el Municipio de Cidra, la Junta de Planificación y la Gobernadora de Puerto Rico. A su vez, el requisito de que la controversia esté madura también se satisface pues el Plan de Ordenación Territorial cuya validez se cuestiona ya fue adoptado por la Junta de Planificación y aprobado por la Gobernadora de Puerto Rico, por lo que se trata de una reglamentación vigente.

Aclarado lo anterior, procede examinar los restantes criterios antes mencionados a la luz del marco jurídico que rige la impugnación de reglamentos en nuestro ordenamiento.

### A. Impugnación de su faz de una regla o reglamento

En Puerto Rico, la adopción de reglamentos por parte de las agencias administrativas está regulada por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.* Dicho estatuto establece el procedimiento que deben seguir las agencias al promulgar reglas o reglamentos que tenga fuerza de ley. A esos efectos, la LPAU define el concepto "reglamentación" como el procedimiento mediante el cual una agencia formula, adopta, enmienda o deroga una regla o un reglamento. Sec. 1.3(n) de la LPAU, 3 LPRA sec. 9603(n). Además, define "regla" o "reglamento" como:

> … cualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley. El término incluye la enmienda, revocación o suspensión de una regla existente. 3 LPRA sec. 9603(m).

En nuestro ordenamiento, se han reconocido dos categorías de reglas: las legislativas y las no legislativas. *Sierra Club et al. v. Jta. Planificación*, 203 DPR 596, 605 (2019). Por un lado, las reglas no legislativas "constituyen pronunciamientos administrativos que no alteran los derechos ni las obligaciones de los individuos". *Mun. de Toa Baja v. DRNA*, 185 DPR 684, 696 (2012).

Por su parte, las reglas legislativas son aquellas que "crea[n] derechos, impone[n] obligaciones y establece[n] un patrón de conducta que tiene fuerza de ley". *Sierra Club et al. v. Jta. Planificación, supra*; *Asociación Maestros v. Comisión*, 159 DPR 81, 93 (2003); *Mun. de San Juan v. JCA*, 152 DPR 673, 692 (2000). Debido a la importancia de este tipo de reglamentación y al impacto que puede tener sobre el público en general, su adopción debe cumplir estrictamente con el procedimiento dispuesto en la LPAU. *Sierra Club et al. v. Jta. Planificación, supra*; *Asociación Maestros v. Comisión, supra*.

En consecuencia, todo procedimiento de reglamentación debe cumplir con cuatro requisitos básicos: (1) notificar al público la reglamentación que se aprobará; (2) proveer oportunidad para la participación ciudadana, que incluya vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. Véanse, Secs. 2.1, 2.2, 2.3, 2.8 y 2.11 de la LPAU, 3 LPRA secs. 9611–9613, 9618 y 9621; *Sierra Club et al. v. Jta. Planificación, supra*, pág. 606; *Centro Unido Detallistas v. Com. Serv. Púb., supra*, pág. 182; *Mun. de San Juan v. JCA, supra*, págs. 690-691.

El cumplimiento con estos requisitos es imprescindible y de ineludible cumplimiento. *Sierra Club et al. v. Jta. Planificación, supra*; *Mun. de Toa Baja v. DRNA, supra*, pág. 695. De hecho, nuestro Tribunal Supremo ha reiterado que "[e]l cumplimiento de ese proceso es indispensable para poder reconocerle fuerza de ley a la regla promulgada, ya que ello forma parte de las

garantías procesales que permean todo el estatuto". *Sierra Club et al. v. Jta. Planificación, supra*, pág. 606; *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, pág. 183. En consecuencia, "[s]i la regla o reglamento no se conforma y ajusta a lo establecido [en la LPAU], carecerá de fuerza de ley y estará sujeto a que se cuestione judicialmente. La agencia está impedida de sustituir el procedimiento de la ley so pena de que se vicie de nulidad la reglamentación adoptada." D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013, pág. 138. Así, **será nulo todo reglamento que no cumpliere sustancialmente con las disposiciones de esta Ley**. Sec. 2.7(a) de la LPAU, 3 LPRA sec. 9617(a). (Énfasis nuestro).

No obstante, tal como dispone la citada sección es preciso destacar que, no toda deficiencia o irregularidad en el procedimiento de reglamentación conlleva automáticamente la nulidad del reglamento, sino únicamente aquellas que afecten sustancialmente el derecho del público a ser notificado adecuadamente y a participar en el proceso. Al respecto, el profesor Fernández Quiñones señala que, según el texto de la LPAU, "es imprescindible cumplir con los requisitos de la notificación de la regla propuesta, concesión de oportunidad a la ciudadanía de presentar sus escritos y publicación de la regla adoptada". D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 121. Véase, también, *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, pág. 188.

Por su parte, la LPAU autoriza a cualquier persona a impugnar de su faz una regla o reglamento ante el Tribunal de Apelaciones dentro del término de treinta (30) días contados a partir de su vigencia. Sec. 2.7(b) de la LPAU, 3 LPRA sec. 9617(b); *Sierra Club et al. v. Jta. Planificación, supra*; *Centro Unido Detallistas v. Com. Serv. Púb., supra*, pág. 183.

Dado que se trata de normas de aplicación general, cualquier persona puede cuestionar el incumplimiento con las disposiciones de la LPAU ante el Tribunal de Apelaciones, independientemente de si participó en las vistas públicas, formó parte del proceso de aprobación o si ha sido directamente afectada por la aplicación del reglamento. *JP v. Frente Unido I,* 165 DPR 445, 462–463 (2005). En ese sentido, en la impugnación de su faz de un reglamento "no se requiere demostrar una lesión a un interés individualizado del litigante para que proceda la revisión, ya que ésta busca invalidar el reglamento en toda circunstancia en que pueda ser aplicable". *Sierra Club et al. v. Jta. Planificación, supra*, pág. 607; *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, pág. 186.

Ahora bien, **el Tribunal de Apelaciones solo tendrá jurisdicción para atender aquellas controversias en las que se alegue el incumplimiento con las garantías procesales mínimas que impone la LPAU**. *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 378 (2018); *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra.* (Énfasis nuestro). De este modo, el análisis de este tipo de recursos **se limita a determinar si la agencia cumplió sustancialmente con los requisitos procesales mínimos establecidos en la LPAU**. *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, págs. 188-189. (Énfasis nuestro).

En cambio, cuando una persona alegue haber sufrido un perjuicio personal como consecuencia de la aplicación de un reglamento, podrá impugnar su validez constitucional ante el Tribunal de Primera Instancia. *Sierra Club et al. v. Jta. Planificación, supra*; *Centro Unido Detallistas v. Com. Serv. Púb., supra*; *JP v. Frente Unido I, supra.*

**B. Ordenación territorial y reglamentación sobre el uso de terrenos**

La legislación puertorriqueña reconoce la importancia de los instrumentos de planificación territorial como herramientas para regular el uso de terrenos y promover el desarrollo ordenado de los municipios. Ello,

pues la Constitución de Puerto Rico exige "la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad [...]". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 455; *Sierra Club et al. v. Jta. Planificación, supra,* pág. 604.

En atención a la importancia de esta función, el Tribunal Supremo de Puerto Rico ha reconocido que los procesos de planificación y zonificación constituyen actuaciones de naturaleza cuasilegislativa y reglamentaria. *Luan Investment Corp. v. Román,* 125 DPR 533, 545-546 (1990). De igual forma, se ha establecido que los permisos que se concedan deben mantenerse dentro del marco de lo aprobado por la Junta de Planificación en el ejercicio de sus facultades para dirigir la política pública en materia de ordenación territorial. *Hatillo Cash & Carry v. ARPe,* 173 DPR 934, 950 (2008). Esto responde a que, mediante la zonificación, el Estado regula el uso de la propiedad y pone en práctica la política pública y los principios de planificación que orientan el desarrollo ordenado de Puerto Rico. *Borschow Hosp. v. Jta. de Planificación,* 177 DPR 545, 556-557 (2009); *Hatillo Cash & Carry v. ARPe, supra,* pág. 953.

No obstante, la facultad de zonificar u ordenar el territorio de Puerto Rico no recae exclusivamente en la Junta de Planificación. Los municipios también cuentan con la autoridad para organizar el uso de su territorio mediante la adopción de un plan de ordenación territorial. En ese sentido, el Artículo 6.006 del Código Municipal, 21 LPRA sec. 7856, autoriza a los municipios a preparar y adoptar planes de ordenación territorial, los cuales establecen las políticas públicas y las normas que regirán el desarrollo físico del municipio.

Los planes de ordenación territorial son preparados o revisados por los municipios en estrecha coordinación con la Junta de Planificación y con otras agencias gubernamentales, con el fin de asegurar su compatibilidad con los

planes estatales, regionales y municipales existentes. Art. 6.014 del Código Municipal, 21 LPRA sec. 7864.

En términos similares, la Sección 3.5.1 del Reglamento para la Ordenación Territorial Municipal de Puerto Rico, Reglamento de Planificación Núm. 43, aprobado el 18 de octubre de 2024, dispone que "[l]os Planes de Ordenación serán elaborados o revisados por los municipios en estrecha coordinación con la Junta de Planificación y con otras entidades gubernamentales concernidas, para asegurar su compatibilidad con los planes estatales, regionales y de otros municipios."

Cabe destacar, además, que **la vigencia de un plan de ordenación territorial depende de la aprobación por la Legislatura Municipal, su adopción por la Junta de Planificación y la aprobación del Gobernador**. Art. 6.011 del Código Municipal, 21 LPRA sec. 7861; Sec. 3.7.1 del Reglamento de Planificación Núm. 43, *supra.* De lo anterior surge claramente que la adopción de un plan de ordenación territorial requiere la intervención del municipio, la Junta de Planificación y la aprobación final del Gobernador, conforme disponen el Código Municipal y el Reglamento de Planificación Núm. 43.

En esa misma línea, el Tribunal Supremo de Puerto Rico ha señalado que, cuando se alegue el incumplimiento de los requisitos procesales en la adopción de este tipo de reglamentación, procede su revisión judicial conforme al esquema dispuesto en la LPAU. *Montoto v. Lorie*, 145 DPR 30, 41 (1998) (SENTENCIA). En consecuencia, al tratarse el Plan de Ordenación Territorial de un instrumento normativo de aplicación general adoptado mediante un proceso de naturaleza cuasilegislativa, cuando se alega que el procedimiento seguido para su aprobación incumplió con las garantías procesales mínimas de la LPAU, la Legislatura autorizó su revisión judicial mediante la impugnación de su faz al amparo de la Sección 2.7 de la LPAU.

Además, dicho estatuto permite que cualquier persona pueda instar este tipo de acción, sin tener que demostrar "una lesión a un interés individualizado". *Sierra Club et al. v. Jta. Planificación, supra*, pág. 607. En consecuencia, el recurso de revisión administrativa ante este Tribunal constituye el mecanismo procesal adecuado para atender los planteamientos del recurrente.

### C. Requisitos procesales para la adopción de planes de ordenación territorial

Como mencionamos anteriormente, entre los requisitos esenciales del proceso de reglamentación se encuentra la obligación de proveer **notificación adecuada al público y de ofrecer la oportunidad de participar en el proceso mediante comentarios o vistas públicas**. Secs. 2.1, 2.2, 2.3, 2.8 y 2.11 de la LPAU, 3 LPRA secs. 9611–9613, 9618 y 9621; *Sierra Club et al. v. Jta. Planificación, supra*, pág. 606; *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, pág. 182; *Mun. de San Juan v. JCA*, *supra*, págs. 690-691. (Énfasis nuestro).

En el caso de autos, la preparación de un plan de ordenación territorial por parte de un municipio requiere un proceso amplio de participación ciudadana, el cual incluye la celebración de vistas públicas. Art. 6.004 del Código Municipal, *supra*. En particular, el Artículo 6.011 del Código Municipal, *supra*, dispone que:

> La elaboración o revisión de los Planes de Ordenación se desarrollará en una (1) sola etapa y a través de la preparación secuencial o concurrente de una serie de documentos. **La misma seguirá un proceso de participación ciudadana mediante vistas públicas, de acuerdo a lo dispuesto en este Capítulo. Se cumplirá, además, con lo establecido en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".** El municipio celebrará vistas públicas en los casos que a continuación se detallan.

> Durante la elaboración o revisión integral del Plan Territorial se requerirán vistas públicas para la evaluación de los siguientes documentos:

(a) Enunciación de Objetivos, Plan de Trabajo, Memorial y Programa;

(b) Avance del Plan Territorial; y

(c) Plan Territorial (Final).

Las vistas públicas para la evaluación de los documentos contenidos en los incisos (a) y (b), o (b) y (c), arriba mencionados, podrán ser celebradas por el municipio el mismo día.

[…]

El municipio notificará a la Junta de Planificación de todas las vistas públicas y le enviará copia de los documentos a presentarse en estas. (Énfasis nuestro). Véase, además, la Sec. 3.6.1 del Reglamento de Planificación Núm. 43, *supra.*

Es decir, en el proceso de adopción o revisión de los planes de ordenación, los municipios deben cumplir, además, con los requisitos de reglamentación establecidos en la LPAU. *Id.*

A esos efectos, la Sección 2.1 de la LPAU, 3 LPRA sec. 9611, establece los requisitos que la agencia deberá cumplir siempre que pretenda adoptar, enmendar o derogar una regla o reglamento. Esto es, la agencia deberá:

… publica[r] un aviso en español y en inglés en no menos de un periódico de circulación general en Puerto Rico, y en español e inglés en la red de internet. Disponiéndose, que si la adopción enmienda, o derogación de la regla o reglamento afecta, a una comunidad de residentes en específicos, la agencia deberá publicar el mismo aviso en un periódico regional que circule en el área donde ubique dicha comunidad, y además deberá pautar un anuncio en una emisora de radio de difusión local de mayor audiencia o mayor cercanía a la comunidad afectada por lo menos en dos (2) ocasiones en cualquier momento en el horario comprendido entre las 7:00 de la mañana y las 7:00 de la noche. El anuncio en la radio deberá indicar la fecha en que se publicó el aviso en el periódico. Tanto el anuncio radial como el aviso contendrán un resumen o explicación breve de los propósitos de la propuesta acción, una cita de la adopción legal que autoriza dicha acción y la forma, el sitio, los días y las horas en que se podrán someter comentarios por escrito o por correo electrónico o solicitar por escrito una vista oral sobre la propuesta acción con los fundamentos que a juicio del solicitante hagan necesaria la concesión de dicha vista oral e indicará el lugar físico y la dirección electrónica donde estará disponible al público, el texto completo de la reglamentación a adoptarse. Al recibir comentarios por correo electrónico, la agencia acusará recibo de los mismos por correo electrónico dentro de dos (2) días laborables de su recibo. El aviso publicado en el periódico contendrá, además, la dirección electrónica de la página donde la agencia haya elegido publicar el aviso en la Red y el texto completo de la regla o reglamento.

Además de lo anterior, la Sección 2.2. de la LPAU, 3 LPRA sec. 9612, dispone que "[l]a agencia proveerá oportunidad para someter comentarios por escrito durante un término no menor de treinta (30) días, contados a partir de la fecha de la publicación del aviso."

Con relación a la celebración de vistas públicas, la Sección 2.3 de la LPAU, 3 LPRA sec. 9613, establece que estas podrán celebrarse, a discreción de la agencia, "**o si su ley orgánica u otra ley la hacen mandatoria**." (Énfasis nuestro). En cualquier caso, "[e]l funcionario que presida la vista preparará un informe para la consideración de la agencia, en el cual se resuman los comentarios orales que se expongan durante la vista." *Id.*

Asimismo, la Sección 3.6.2 del Reglamento de Planificación Núm. 43 establece requisitos similares a los que dispone la Sección 2.2 de la LPAU sobre la publicación del aviso de vista pública. En específico establece que:

a. Todo municipio que decida desarrollar o revisar un Plan de Ordenación deberá cumplir con la Ley Núm. 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", según enmendada.

b. El municipio notificará la celebración de vista pública, mediante:

1. Publicación de un aviso en español y en inglés en no menos de un periódico de circulación general de Puerto Rico y en la red de internet.

2. Publicación de un aviso en español y en inglés en un periódico regional que circule en el área donde ubique dicho municipio o municipios que elaboren o revisen conjuntamente un Plan de Ordenación.

3. Pautar un anuncio en una emisora de radio de difusión local de mayor audiencia o cercanía al municipio o municipios afectados por lo menos en dos (2) ocasiones en cualquier momento en el horario comprendido entre las 7:00 de la mañana y las 7:00 de la noche.

a) El anuncio en la radio deberá indicar la fecha en que se publicó el aviso en el periódico.

b) La emisora emitirá una Certificación de publicación al municipio o municipios.

4. Tanto el anuncio radial como el aviso contendrán un resumen o explicación breve de los propósitos de la propuesta acción, una cita de la adopción legal que autoriza dicha acción y la forma, el sitio, los días y las horas en que se podrán

someter comentarios por escrito o por correo electrónico o solicitar por escrito una vista oral sobre la propuesta acción con los fundamentos que a juicio del solicitante hagan necesaria la concesión de dicha vista oral e identificará el lugar físico y la dirección electrónica donde estará disponible al público, el texto completo de la reglamentación a adoptarse.

5. Al recibir comentarios por correo electrónico, la agencia acusará recibo de estos por correo electrónico dentro de dos (2) días laborables de su recibo.

6. El aviso publicado en el periódico contendrá, además, la dirección electrónica de la página donde la agencia haya elegido publicar el aviso en la Red y el texto completo de la regla o reglamento.

c. El municipio podrá dar aviso de las vistas en cualquier otra forma que se estime necesaria para garantizar una participación ciudadana efectiva.

d. La programación de la publicación de vista pública no será menor de quince (15) días de anticipación a la fecha de la vista.

e. Notificar mediante comunicación escrita la celebración de la vista pública a las agencias concernidas del Gobierno estatal mediante correo certificado, a la mano o por correo electrónico con acuse de recibo y presentar la constancia de la notificación a la Junta.

f. La evidencia de la notificación deberá ser parte del expediente administrativo.

g. Tanto el anuncio radial como el aviso publicado en el periódico indicará, lo siguiente:

1. Un resumen o explicación breve de los propósitos de la propuesta acción;

2. Una cita de la adopción legal que autoriza dicha acción y la forma;

3. El sitio, los días y las horas en que se podrán someter comentarios por escrito o por correo electrónico;

4. El lugar físico y la dirección electrónica donde estará disponible al público el documento con el texto completo de la reglamentación a enmendarse o adoptarse;

5. El proceso al recibir comentarios por correo electrónico, donde la junta o el municipio acusará recibo de estos por correo electrónico dentro de dos (2) días laborables de su recibo; y

6. La dirección electrónica de la página donde se haya elegido publicar el aviso en la red y el texto completo de la regla o reglamento.

Por otro lado, la Sección 2.5 de la LPAU, 3 LPRA sec. 9615, requiere que toda regla o reglamento que sea adoptado o enmendado por una agencia contenga, además del texto, la siguiente información:

(a) Una cita de la disposición legal que autoriza su adopción o enmienda;

(b) una explicación breve y concisa de sus propósitos o de las razones para su adopción o enmienda que incluya un resumen ejecutivo disponiendo de forma clara y precisa el propósito, la justificación y los costos y beneficios de la reglamentación propuesta;

(c) una referencia a todas las reglas o reglamentos que se enmienden, deroguen o suspendan mediante su adopción;

(d) la fecha de su aprobación; y

(e) la fecha de vigencia.

De otra parte, tanto la LPAU como el Reglamento de Planificación Núm. 43 exigen que el expediente administrativo de reglamentación contenga los documentos que evidencien el cumplimiento con dicho procedimiento. Sec. 2.6 de la LPAU, 3 LPRA sec. 9616; Sec. 3.6.3 del Reglamento de Planificación Núm. 43. La LPAU requiere que la agencia mantenga disponible para inspección pública un expediente oficial con toda la información relacionada a una propuesta adopción de regla o reglamento, así como el adoptado o enmendado incluyendo, pero sin limitarse a:

(a) Copias de toda publicación en relación a la regla o al procedimiento.

(b) Toda petición, requerimiento, memorial o comentario escrito radicado ante la agencia y cualquier material escrito considerado por la agencia en relación a la adopción de la regla y al procedimiento seguido.

(c) Cualquier informe preparado por el oficial que presida la vista resumiendo el contenido de las presentaciones.

(d) Una copia de cualquier análisis regulatorio preparado en el procedimiento para la adopción de la regla.

(e) Una copia de la regla y una explicación de la misma.

(f) Todas las peticiones de excepciones, enmiendas, derogación o suspensión de la regla.

Mientras que la Sección 3.6.3 del Reglamento de Planificación Núm. 43 establece que:

> El municipio remitirá a la Junta copia del expediente oficial con toda la información relacionada a una propuesta adopción o revisión de un Plan de Ordenación, disponible para inspección pública, incluyendo, pero sin limitarse a:
>
> a. Copias de toda publicación en relación con el Plan de Ordenación Territorial o el procedimiento para su adopción, incluyendo copias de los avisos públicos, del acta o minuta y la hoja de participantes o asistentes a reuniones o vistas públicas.
>
> b. Toda petición, requerimiento, memorial o comentario escrito radicado ante la agencia y cualquier material escrito considerado por la agencia en relación con la adopción del plan y al procedimiento seguido.
>
> c. Cualquier informe preparado por el oficial que presida la vista resumiendo el contenido de las presentaciones.
>
> d. Una copia de cualquier análisis regulatorio preparado en el procedimiento para la adopción del plan.
>
> e. Todas las peticiones de excepciones, enmiendas, derogación o suspensión del plan.
>
> f. Incluir la mención de las recomendaciones de la Junta de Planificación, si alguna.
>
> g. Incluir un resumen de los comentarios recibidos con posterioridad a la Vista Pública en el término de quince (15) días luego de llevada a cabo.

De lo anterior se desprende que la disposición del Reglamento de Planificación Núm. 43 en cuanto al contenido del expediente administrativo es mucho más específica y rigurosa que la contenida en la Sección 2.6 de la LPAU, *supra*.

No obstante, reiteramos que en el contexto de una impugnación de su faz al amparo de la Sección 2.7 de la LPAU, la revisión judicial se limita a evaluar el cumplimiento con las garantías procesales mínimas dispuestas en dicho estatuto, sin que proceda examinar incumplimientos a otras disposiciones que no inciden con esas garantías mínimas. 3 LPRA sec. 9617; *Fuentes Bonilla v. ELA et al.*, *supra*, pág. 378; *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*. págs. 188-189.

**III.**

Como se expuso anteriormente, la jurisdicción de este Tribunal en una impugnación de su faz se limita a evaluar si el proceso de reglamentación cumplió sustancialmente con las garantías procesales mínimas que impone la LPAU.

A la luz de ese marco, procede delimitar los señalamientos que pueden ser atendidos en el presente recurso.

En ese sentido, el cuarto señalamiento de error, dirigido a cuestionar el desempeño de la Junta de Comunidad y su alegado incumplimiento con las disposiciones del Reglamento de Planificación Núm. 43 en cuanto a la promoción de la participación ciudadana, no plantea un incumplimiento de las garantías procesales mínimas de la LPAU, sino que se refiere a actuaciones administrativas particulares dentro del proceso. Por tanto, dicho planteamiento queda fuera del ámbito de revisión de este Tribunal en este tipo de recurso, por lo que procede su desestimación.

Delimitado el alcance de nuestra jurisdicción, procedemos a examinar de forma individual cada uno de los planteamientos del recurrente, a los fines de determinar si se enmarcan dentro de los requisitos de la LPAU y, de ser así, si constituyen incumplimientos sustanciales.

En su primer señalamiento de error, el recurrente impugna diversos aspectos relacionados con los avisos y anuncios de la vista pública celebrada el 24 de junio de 2025.

En primer lugar, señala que el aviso en inglés publicado en el periódico *La Cordillera* contenía dos fechas distintas para la vista. Del expediente surge que la vista se celebró en la fecha correcta y que los avisos permitieron identificar adecuadamente la convocatoria. Así, la inconsistencia señalada no alcanza el nivel de un incumplimiento sustancial.

Alega también que no surge del expediente la certificación de la emisora sobre el anuncio radial para la vista del 24 de junio de 2025, así como que

estos anuncios no se transmitieron con la antelación requerida. Estos planteamientos responden a exigencias del Reglamento de Planificación Núm. 43, no a la LPAU, por lo que no son revisables en este recurso. En todo caso, del expediente sí surge la certificación correspondiente.[11]

En cuanto a la alegada omisión en dicho anuncio radial sobre la fecha de publicación del anuncio en el periódico, así como a las discrepancias en los horarios anunciados para esa vista, del expediente surge que la convocatoria fue adecuadamente difundida y que las vistas se celebraron conforme pautadas. En ese contexto, tales deficiencias no constituyen incumplimientos sustanciales.

El recurrente también sostiene que el contenido del anuncio radial para la vista del 24 de junio de 2025 no incluía toda la información requerida. Sin embargo, de la certificación de la emisora surge que el anuncio contenía sustancialmente la información necesaria para orientar al público. En cuanto a la omisión de advertir sobre el derecho a solicitar una vista oral, ello no resulta determinante en este caso, toda vez que la celebración de la vista era obligatoria por ley. Asimismo, el anuncio indicaba a donde podían comunicarse las personas en caso de requerir información adicional.

En lo concerniente a la vista pública celebrada el 4 de septiembre de 2025, el recurrente plantea que no surge del expediente evidencia de anuncios radiales. No obstante, del expediente sí surge que el Municipio cumplió con su obligación de publicar el anuncio radial.[12]

A su vez, señala que el aviso en los periódicos para dicha vista se publicó con menos de quince días de antelación. Este planteamiento también responde a un requisito del Reglamento de Planificación Núm. 43, por lo que no es revisable en este recurso.

---

[11] Véase Apéndice 18 de la *Oposición a Recurso de Revisión Administrativa* presentada por el Municipio, pág. 3, Entrada Núm. 9 del SUMAC del TA.
[12] Véase Apéndice 22 y 27 de la *Oposición a Recurso de Revisión Administrativa* presentada por el Municipio, pág. 3, Entrada Núm. 9 del SUMAC del TA.

Sobre la alegada omisión en el aviso en inglés de informar sobre el derecho a solicitar una vista oral, tal señalamiento no constituye un incumplimiento sustancial, dado que la celebración de la vista era obligatoria.

Por otro lado, el recurrente sostiene que no se publicó el aviso de la vista a celebrarse el 4 de septiembre de 2025 en un periódico regional. No obstante, del expediente surge que dicha publicación sí se realizó, por lo que el planteamiento carece de mérito.[13]

En relación con los señalamientos dirigidos al expediente administrativo, el recurrente alega que no surge evidencia de que se hayan publicado los anuncios en el internet quince (15) días antes de las vistas propuestas. Toda vez que este requisito responde al Reglamento de Planificación Núm. 43, no es revisable en este recurso.

Asimismo, plantea que el expediente carece de certificaciones relacionadas con el proceso de notificación. Cabe precisar que, contrario a lo que exige el Reglamento de Planificación Núm. 43, la LPAU lo que exige es que el expediente administrativo de reglamentación contenga los documentos que evidencien el cumplimiento con dicho procedimiento. Sec. 2.6 de la LPAU, 3 LPRA sec. 9616. No requiere certificaciones de cumplimiento específicas. Así pues, lo determinante es que el expediente refleje el cumplimiento con el proceso de reglamentación. En este caso, del expediente ante nuestra consideración —incluyendo los documentos señalados por las partes en sus respectivos escritos— surge evidencia suficiente de la publicación de avisos, la disponibilidad de documentos y la celebración de vistas públicas.

Finalmente, el recurrente señala que los avisos no incluían advertencia sobre el derecho a solicitar una vista oral. Por las razones antes expuestas, ello no constituye un incumplimiento sustancial en este caso ya que las vistas

---

[13] Véase Apéndice 18 de la *Oposición a Recurso de Revisión Administrativa* presentada por el Municipio, Entrada Núm. 9 del SUMAC del TA.

eran obligatorias por disposición de ley. Art. 6.011 del Código Municipal, 21 LPRA sec. 7861.

A la luz de lo anterior, el primer señalamiento de error no demuestra un incumplimiento sustancial con las garantías procesales aplicables.

En su segundo señalamiento de error, el recurrente alega que la reglamentación incumple con la Sección 2.5 de la LPAU al carecer de un resumen ejecutivo que exponga de forma clara su propósito, justificación y costos y beneficios.

No obstante, dicho planteamiento no incide sobre las garantías procesales mínimas que rigen este tipo de recurso. Como se expuso anteriormente, la revisión judicial en una impugnación de su faz se limita a determinar si la agencia cumplió sustancialmente con los requisitos dirigidos a asegurar la adecuada notificación al público y la oportunidad de participación ciudadana en el proceso de reglamentación.

En ese contexto, los requisitos de contenido dispuestos en la Sección 2.5 de la LPAU no están dirigidos a salvaguardar dichos derechos, sino a regular la estructura interna de la reglamentación adoptada, aspecto que, en el caso de los planes de ordenación territorial, se encuentra regulado por el Código Municipal y el Reglamento de Planificación Núm. 43, los cuales establecen los parámetros específicos sobre su contenido.

En consecuencia, el segundo señalamiento de error tampoco se cometió.

Por último, en su tercer señalamiento de error, el recurrente sostiene que el expediente administrativo es insuficiente. Sin embargo, como señalamos anteriormente, del expediente —incluyendo los documentos señalados por las partes— surge evidencia suficiente del proceso de reglamentación, por lo que no se demuestra incumplimiento sustancial alguno.

A tenor de todo lo anterior, concluimos que este Tribunal carece de jurisdicción para atender aquellos planteamientos del recurrente que no inciden sobre las garantías procesales mínimas establecidas en la LPAU. En cuanto a los señalamientos que sí son susceptibles de revisión en este tipo de recurso, determinamos que no se demostró un incumplimiento sustancial con los requisitos de notificación, participación ciudadana y contenido del expediente administrativo. En consecuencia, los errores señalados no justifican la nulidad del Plan impugnado.

**IV.**

Por los fundamentos antes expuestos, se ***desestima*** parcialmente el recurso de revisión administrativa presentado por falta de jurisdicción en cuanto a aquellos señalamientos que no inciden sobre las garantías procesales mínimas de la LPAU. En lo demás, se ***confirma*** el proceso de aprobación de la Primera Revisión Integral del Plan de Ordenación Territorial del Municipio de Cidra.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones